**UNITED STATES of America,**
**Plaintiff,**

v.

The **UNKNOWN HEIRS**, immediate and remote and next of kin of any and **ALL PERSONS BURIED IN** the cemetery designated and known as **POST OAK MISSION CEMETERY**, situate in a tract of land in **COMANCHE COUNTY, OKLAHOMA**, particularly described as Lots 1 and 2 in the East Half of the Northwest Quarter, Section 7 in Township 2 North Range 14 W.I.M., and all persons claiming right of sepulture in said cemetery for themselves or others, Defendants.

**Civ. A. No. 7553.**

United States District Court
W. D. Oklahoma.
July 12, 1957.

H. Dale Cook, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff.

Vernon C. Field and Richardson & Cavanagh, Lawton, Okl., for defendants.

RIZLEY, District Judge.

The Department of the Army finding it necessary to expand Fort Sill Military Reservation for use in connection with the Fort Sill artillery and guided missile center project, purchased a tract of land identified and designated as Tract No. D–447. Within said tract there is a cemetery known as Post Oak Mission Cemetery. The cemetery contains some seven hundred graves including the graves of the celebrated and distinguished last chief of the Comanche Indians, Quanah Parker, and his illustrious mother, Cynthia Ann Parker.

In order for the Department of the Army to complete its program of expansion and fully utilize the tract of land heretofore mentioned and described it is necessary that the bodies interred therein be removed and reinterred at some suitable location. A new location for reburial purposes was acquired by the Government in the Northeast Quarter of Section 27, Township 2, North Range 15 W.I.M. in Comanche County, Oklahoma and said tract has been made available to the heirs and next of kin of those buried in the Post Oak Mission Cemetery.

The above-styled cause was instituted by the Government to give appropriate and legal sanction to its proceeding for removal and reinterment of those persons found to be interred in Post Oak Mission Cemetery.

There is no objection on the part of the Government for reinterment in other locations than the one obtained by it if the next of kin so desire.

Timely, and pursuant to proper notice in this case one To-Pay by and through her counsel entered a general appearance in said cause and asserted and alleged that she is the surviving spouse of Quanah Parker and as such under Oklahoma law has the right to designate the place of his interment. Likewise, Neda Parker Birdsong, Wanda Page, Alice Purdy, Len Parker, Baldwin Parker and Tom Parker through their counsel entered their appearance and filed their response claiming among other things that they are six of the surviving children of Quanah Parker and grandchildren of Cynthia Ann Parker. They denied that To-Pay is the surviving spouse of their father Quanah Parker. They say that prior to Oklahoma statehood their father Quanah Parker as Chief of the Comanche Tribe pursuant to existing Indian laws and customs had married several women including their mothers. They further say that in 1907 their father as Chief of the Comanches and after visiting the Congress of the United States and also after having a visit with President Theodore Roosevelt at which time he was advised it was illegal under the laws of the United States and the State of Oklahoma to have plural wives, decided to bow to the will of the law makers and that he fully adopted the ways of the white man and selected among his then Indian wives an Indian woman known as To-nar-cy as his legal wife, lived with her as such to the exclusion of all others for the remainder of his life and died in her arms in 1911.

The surviving children further say that even admitting for argument's sake that their father Quanah Parker was married to To-Pay (which they deny), that by reason of To-Pay's remarrying after their father's death to one Jud Komah that under Indian law and custom she no longer remained the widow of

their deceased father and loses all the rights she might have had under Indian law to claim to be the widow of such deceased Indian.

Neither To-Pay, who claims to be the surviving spouse of Quanah Parker, or his surviving children desire to have him reinterred in the tract acquired by the Government for that purpose. To-Pay wants him reinterred in a cemetery at Cache, Oklahoma. The children want him reinterred in the Government Cemetery at Fort Sill, Oklahoma. Either of said locations are agreeable to the Government and it takes no part in the squabble between To-Pay and the alleged children of said Quanah Parker in respect to the place of interment.

On the 9th day of July, 1957, the matter came on to be heard before this Court on the issues joined by the respective responses of To-Pay on the one hand and those persons designated herein as the children of Quanah Parker and the grandchildren of Cynthia Ann Parker, deceased.

To-Pay appeared in person and by her counsel Vernon C. Field, Esquire. The Parker children appeared some in person and by their counsel Arthur L. Cavanagh, Esquire. The Government, the plaintiff in said cause, was represented by H. Dale Cook, Assistant United States District Attorney for the Western District of Oklahoma, who appeared in the capacity of an observer and took no part in the controversy between the respective respondents.

A record was made consisting of various and sundry admissions of the parties, written exhibits and for the purpose of expediting the cause, the Court permitted counsel for the respective respondents to state into the record the names of the various and sundry witnesses and what their testimony would be if they were sworn and examined in Court, including the agreement between counsel that such witnesses as might be produced by the respective respondents, giving their names, would testify to the facts narrated by counsel for the record.

We think a fair summary of the testimony of the respondent To-Pay would be that she was the wife of Quanah Parker—one of a multiple of wives—that she lived with him for many years, first in a tent or tepee and subsequently in what she referred to as the big house. That she had a number of children by him all of whom are now deceased. That she is about 87 years of age. That she received one-third of his estate. That Quanah Parker prior to his death stated that he desired to be buried alongside his mother, Cynthia Ann Parker, and that he be buried with his Comanche people for all of which reasons she desires to have him reinterred at Cache, Oklahoma.

The respondent To-Pay likewise offered in evidence a letter from the United States Department of the Interior stating that To-Pay was recognized as one of the plural wives of Quanah Parker and that at the time of his death the Government recognized To-Pay and To-nar-cy as his two surviving wives and that both were entitled to share in his estate.

The respondent To-Pay also introduced in evidence what purports to be a letter from Werahre Parker Tahmahkera who claims to be the oldest living daughter of Quanah Parker. She joins with the respondent To-Pay in requesting that he be buried at Cache, Oklahoma. She claims her father recognized To-Pay as his wife and that at some time he discarded To-nar-cy claiming that she had been unfaithful to him.

The testimony of the respondents designated as children of Quanah Parker may be properly summarized, we believe, by saying as surviving children of Quanah Parker that they have the right to designate the place of reinterment. They say he was not married to To-Pay at the time of his death. They admit that he lived with To-Pay and numerous other wives and that when he died both To-Pay and To-nar-cy were living.

They claim their father at statehood time or thereabouts after being told

that it was illegal to have plural marriages, discarded all of his wives except To-nar-cy and that she was his legal or chief wife at the time of his death and that since she is now deceased they have the right of designation. They offered numerous supporting witnesses whose testimony was narrated in the record by their counsel.

The legal aspects of the respective counsel, we think may be properly summarized about as follows. Counsel for To-Pay claims that she is the sole surviving spouse. That she was a legal common-law wife at least under Indian law and custom. That the Department of the Interior recognized her as a wife of Quanah Parker and found that she was entitled to inherit on an equality with one To-nar-cy who was also a wife of Quanah Parker. That under Oklahoma law and by reason of a late decision of the Supreme Court of Oklahoma, she as the surviving spouse of Quanah Parker has the right to designate the burial place.

Counsel representing the children of Quanah Parker says that To-Pay has no legal status as a surviving spouse; that under the law of the land at the time To-Pay went to live with Quanah Parker as his wife, he already had numerous other wives and therefore was incompetent to contract a common-law marriage. That even if the marriage under Indian laws and customs is valid that under the same Indian customs and laws, she lost all her rights as the widow when she remarried subsequent to the death of Quanah Parker.

■ We think it extremely doubtful that under the facts in this case that either the Oklahoma statutes or the reported decisions furnish any comfort for the litigants herein. This Court would be very reluctant to say that there was a valid common-law marriage between the respondent To-Pay and the Indian Chieftain. Certainly the legal ability of the parties to contract is vital to any common-law marriage. If we look to Indian customs, we run afoul with the laws of the United States in respect to plural marriages. By the same token we

would be very reluctant to stigmatize the principals involved and judicially illegitimatize the children that were born to To-Pay and Quanah under the arrangement that existed between them, whatever it might have been.

■■ We do not find it necessary to do either. We think this Court has wide latitude and discretion in determining and directing the proper place of reinterment. We believe it is the duty of this Court to settle this dispute in a manner that will most likely give dignity to the ashes of this distinguished Indian Chief and his illustrious mother and to designate the place of reinterment that will most likely remain permanent and well kept until the Angel Gabriel speaks.

According to the historians, Quanah Parker was the son of Cynthia Ann Parker, a white woman, and one Peta Nokoni, a Comanche Chief. The story of Cynthia Ann Parker has been told in literature and song. It has been said that she was kidnapped in 1836 when nine years of age by the Comanches who destroyed the Texas frontier fort where her family had settled. Years later she was identified and urged to return to her own race, but through her marriage and the birth of her half-Indian children she had become a true Comanche at heart. The historians say that the Texas Rangers forcibly returned her to her white family and that she died soon thereafter.

Her son Quanah was born about 1845 and was of superior intelligence and character. While principal chief of his tribe, he led his warriors into battle at Adobe Walls in Texas which was the last Great Plains Indian fight against the white buffalo hunters. He rode at the head of his tribe when they surrendered the tribal rule at Fort Sill in 1875. This closed Indian warfare in the region of Southwestern Oklahoma. His mother Cynthia Ann was first interred in Texas but at his request was removed to the cemetery at Post Oak Mission. At his death in 1911, he was buried beside her. I believe it was in 1930, or thereabout, when a suitable monument was erected at his grave, purchased by Congressional

appropriation. It is from this grave that he must be removed for reinterment.

■ After considering all of the facts in this case and with due regard to the fact that To-Pay did live with Quanah Parker and bore him children, nevertheless this Court is of the opinion that it is for the best interest of all concerned that Chief Quanah Parker and his mother, Cynthia Ann Parker, be reinterred in the Government cemetery at Fort Sill.

To-Pay — now eighty-seven — cannot hope to live much longer. It may be that the cemetery at Cache will be kept intact for years. It is more likely that the new cemetery which the Government has acquired for reinterment would be beautified and kept intact much longer than the Cache cemetery, but none of the respondents are desirous of having reinterment at the new location.

■ It will therefore be the order and judgment of this Court that the remains of Quanah Parker and his mother Cynthia Ann Parker, be reinterred in the Government cemetery at Fort Sill, Oklahoma. It will be the further order of this Court that the expenses of reinterment be borne by the Government of the United States and that the granite marker heretofore erected at the Oak Park Mission cemetery be likewise removed at the expense of the Government and placed at the grave of Quanah Parker at Fort Sill, Oklahoma.